**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Moore, ) | No. CIV 06-2408-PHX-MHM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| American Family Mutual Insurance ) Company, a Wisconsin corporation, ) | |
| Defendant. ) | |

Currently before the Court is Defendant American Family Mutual Insurance Company's ("Defendant") Motion for Summary Judgment. (Dkt.#7). After reviewing the papers and record and finding oral argument to be unnecessary, the Court issues the following Order.

**I.    Factual Background**

On September 11, 2006, Plaintiff Scott Moore ("Plaintiff") filed this action in Maricopa County Superior Court asserting claims of breach of contract, bad faith and punitive damages against Defendant (Dkt.#1). Plaintiff asserts such claims as the assignee of the Defendant's insureds Rolf Alarick Orest ("Mr. Orest") and Susan Laguire Orest ("Ms.

1  Orest")[1] (collectively the "Orests") by and through a Damron Agreement[2] entered into
2  between the Orests and Plaintiff on April 22, 2005. (Defendant's Statement of Facts
3  ("DSOF") ¶ 8). The Damron Agreement arises out of a car-pedestrian accident involving
4  Mr. Orest and Plaintiff on October 6, 2000. (DSOF ¶ 1). Mr. Orest was driving a 1997 Ford,
5  insured by Defendant, at the time of the accident. After the accident, Plaintiff brought a
6  personal injury suit against the Orests in Maricopa County Superior Court in CV2002-
7  019400 which ultimately resulted in the stipulated judgment and an "Agreement to Consent
8  to Judgment" against the Orests in exchange for the Orests' rights against Defendant. (DSOF
9  ¶¶ 8-9). Plaintiff obtained the rights of the Orests because Defendant denied the Orests'
10 claim for insurance coverage resulting from Plaintiff's personal injury suit against the Orests.
11 (DSOF ¶¶ 5-7).
12      On October 10, 2006, upon removal to this Court, Defendant answered Plaintiff's
13 complaint (Dkt.#2). On February 5, 2007, prior to any Rule 16 Fed.R.Civ.P. scheduling
14 conference, Defendant filed the instant Motion for summary judgment claiming that the
15 Orests' automobile liability insurance coverage for the 1990 Geo, Policy # 0659-0646-03-99-
16 SPPA-AZ and the 1997 Ford, Policy # 0659-0646-04-02-SPPA-AZ, which was involved in
17 the accident, were properly terminated for non-payment of premium prior to the October 6,
18 2000 accident at issue, thus depriving the Orests of coverage. The Plaintiff disputes any such
19 lack of coverage.

**II.    Evidentiary Objections**

    **A.    Ms. Romaker's Affidavit/Business Records**

---

[1] Ms. Orest appears to now go by the name of Ms. Susan Shumbre.

[2] Damron v. Sledge, 105 Ariz. 151, (1969). A "Damron Agreement" is a settlement agreement entered into by an insured under a liability policy who stipulates to a judgment in favor of a third party tort claimant, assigns his rights against the insurer to the claimant, and receives in return a covenant from the claimant not to execute against the insured, where the insurer has refused to provide a defense to the insured in the underlying action. Associated Aviation Underwriters v. Wood, 209 Ariz. 137, 142, 98 P.3d 572 (Ariz.App.2004).

In support of Defendant's position that the Orests' insurance coverage was properly terminated well prior to the accident at issue in this case, Defendant offers the affidavit of Angela Romaker, a Billing Resolution Specialist with Defendant. Ms. Romaker's affidavit, which is based upon her personal knowledge, states that on April 18, 2000, a regular billing notice was mailed to the Orests at 2031 West Campbell Avenue, Phoenix, Arizona 85015, requesting payment of $144.13 for payment on both policies.  In addition, Ms. Romaker states that on May 22, 2000, because no premium payment had been rendered, Defendant mailed a past due notice for both premiums to the Orests at the same address. Specifically, the past due notice stated in pertinent part:

> We have not received the past due minimum payment of $144.13. If payment is not received by May 28, 2000, the following policy(ies) will be cancelled or will not be renewed
> 1990 Geo      0659-0646-03-99-SPPA-AZ
>
> 1997 Ford    0659-0646-04-02-SPPA-AZ

Ms. Romaker further states that on June 7, 2000, cancellation letters, one letter addressed to Ms. Orest for the Ford and one letter addressed to both Mr. and Ms. Orest for the Geo, were sent to the Orests at the 2031 West Campbell address. The cancellation letters for the Ford and Geo policies stated in pertinent part:

> We are unable to continue your policy's coverage because as of the date of this notice we have not received your payment for the premium past due. Coverage stopped at 12:01 a.m. Standard time on the date shown above.

Ms. Romaker further states that on August 3, 2000, in response to a request for payment of an overdue amount on the cancelled policies, the Orests paid $83.42 to bring their past policies up to a balance of zero. Finally, Ms. Romaker states that it is not Defendant's practice and policy to keep copies of all the notices mailed to its insureds, but that Defendant keeps electronic records of the type of letter sent and the date it was sent.

Plaintiff objects to Ms. Romaker's affidavit as being insufficient under the business records exception to the hearsay rule. See Fed.R.Evid. 803(6). Plaintiff contends that Ms. Romaker's affidavit lacks an indication that a person with first-hand knowledge performed any mailing of the cancellation notices or how it was recorded. In addition, Plaintiff contends

- 3 -

1 that Ms. Romaker's affidavit should at least be subject to cross-examination to challenge its
2 trustworthiness.

3 At this point, Ms. Romaker's appears to be admissible. See United States v. Catabran,
4 836 F.2d 453, 457 (9th Cir. 1988) (business records admissible when they are: "(1) made or
5 based on information transmitted by a person with knowledge at or near the time of the
6 transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the
7 source of information nor method or circumstances of preparation indicating a lack of
8 trustworthiness."). Ms. Romaker's affidavit is based upon her personal knowledge as a
9 Billing Resolution Specialist for Defendant and further states that the account reproduction
10 of the Orests' activity "is a true and accurate copy of business records recorded at the time
11 of each event" and recorded by persons with first-hand knowledge in the regular course of
12 business activity. Such statements demonstrate compliance with Rule 803(6). In addition,
13 it is immaterial that the business records appear in computer compilation form, rather than
14 as hard copies of the original mailed notices. See id.[3] Finally, based upon the statements of
15 the affidavit, at this stage of the litigation the documents appear trustworthy. However, as
16 explained below, the trustworthiness of the documentation has not been subject to any
17 challenge as of yet and thus calls into question the timing of the instant Motion.

18 **B.     Ms. Orest's Prior Deposition Testimony**

19 Defendant objects to the Plaintiff's reliance on deposition testimony given by Ms.
20 Orest in the previous Superior Court proceeding resulting in the Damron Agreement in CV
21 CV2002-019400. Defendant contends that such testimony constitutes inadmissible hearsay
22 and should not be considered by the Court for purposes of this litigation.

23 The Court will sustain Defendant's objection as the deposition testimony constitutes
24 inadmissible hearsay. The only possible hearsay exception that could save Ms. Orest's
25 testimony is Rule 804(b)(1) which provides for the use of hearsay evidence where the

---

[3] The Court also finds no basis for any type of spoilation finding based upon the record presented at this time.

- 4 -

1 testimony by a witness in another hearing is subject to question or cross-examination by the
2 party against whom the testimony is offered or a predecessor in interest of such. Notably,
3 however, Defendant was not a party to the previous litigation between Plaintiff and the
4 Orests and did not have an opportunity to challenge or question Ms. Orest regarding her
5 recollection of events. As such, Ms. Orest's deposition testimony in the former Superior
6 Court litigation is inadmissible.

**III.    Standard**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87 106 S.Ct. 1348 (1986). The evidence must be viewed in the light most favorable to the nonmoving party. Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**IV.    Analysis**

   **A.    Cancellation of Coverage**

A.R.S. § 20.1632.01(B) states in pertinent part:

> For any motor vehicle insurance policy cancelled or nonrenewed for nonpayment of premium by the insurer after the grace period, the insurer must mail a notice of cancellation or nonrenewal to the policyholder at the policyholder's last address on record with the insurer by first class mail. The cancellation or nonrenewal is effective on the date the notice is mailed to the policyholder. . . .

Thus, under Arizona law, cancellation of insurance coverage is effective upon mailing to the last known address of the insured. See Norman v. State Farm Mutual Insur. Co., 201 Ariz. 196, 198 (Ariz.App. 2001) ("[C]ancellation [of automobile policy] is effective on the

1   date the notice is mailed."). In this case, the only evidence in the record to date, suggests that
2   Defendant mailed the June 7, 2000, cancellation letters regarding the Ford Policy to the last
3   known address of both Mr. and Ms. Orest on Campbell Avenue in Phoenix, Arizona. Such
4   evidence comes directly from the affidavit of Ms. Romaker and is not controverted, to date,
5   by the admissible record. For example, although Mr. Orest provides his affidavit stating that
6   he did not receive the notice, such testimony misses the mark in terms of suggesting non-
7   compliance with proper cancellation. Importantly, the statute is only concerned with whether
8   the notice of cancellation was properly mailed to the insured. The statute is not concerned
9   with whether the insured received actual notice of the cancellation. In addition, although the
10  Plaintiff relies on deposition testimony of Ms. Orest regarding the possible change of her
11  address with the Defendant, that testimony is not admissible. Therefore, based upon the
12  relevant current record, which is made up primarily of the affidavit of Ms. Romaker, the
13  Orests' insurance coverage appears to have been terminated by the Defendants' mailing of
14  the notice of cancellation to the Campbell Avenue address.

15      However, while the current record suggests that the Defendant properly complied with
16  § 20.1632.01, the current posture of these proceedings appears to have prejudiced the
17  Plaintiff's ability to respond to Defendant's motion. Notably, as demonstrated by the Parties'
18  papers, there has been no discovery performed to date in this case. For instance, Defendant
19  notes that it is not yet obligated under the Federal Rules of Civil Procedure to exchange any
20  disclosure statement with Plaintiff as there has been no Rule 26(f) meet and confer to date
21  created by the setting a scheduling conference. In this Court's view, the lack of any
22  opportunity for discovery has prevented the Plaintiff from having a full and fair opportunity
23  to discover important aspects of the case such as challenging the trustworthiness of the
24  affidavit of Ms. Romaker regarding the mailing of the cancellation notice. In addition,
25  Plaintiff has not been able to identify or question any other individuals with personal
26  knowledge of Defendant's business practices regarding the mailing as well. Without such
27  an opportunity, it is premature to grant summary judgment in Defendant's favor regarding
28  a lack of coverage. Notably, Defendant cites Rule 56(f) Fed.R.Civ.P. in opposition to

1 Defendant's motion, which authorizes the Court to either "refuse the application for
2 judgment or . . . order a continuance to permit . . . discovery to be had . . ."   As identified
3 by the Defendant, Plaintiff's Rule 56(f) request is procedurally deficient.  For instance,
4 Plaintiff fails to set forth in affidavit form why the granting of summary judgment would be
5 premature and what specific additional discovery is necessary to fully develop the issue of
6 mailing.  However, due to the early stages of the litigation and the lack of any discovery, the
7 Court will grant the request.  See Burlington No. Santa Fe R.R.Co. v. Assiniboine & Sioux
8 Tribes of Fort Peck Reservation, 323 F.3d 832, 773 (9th Cir. 2003) (Where . . . a summary
9 judgment motion is filed so early in the litigation, before a party has had any realistic
10 opportunity to pursue discovery relating to its theory of the case, district courts should grant
11 any Rule 56(f) motion fairly freely.").  While Defendant's theory may prove to be true that
12 the notice of cancellation was properly mailed, the Court finds that the Plaintiff should at
13 least be giving the opportunity to perform discovery regarding its theory of the case
14 regarding the existence of coverage.  As such, the Court will deny Defendant's Motion for
15 summary judgment without prejudice with leave to refile at a more appropriate time with the
16 benefit of discovery.

17 **Accordingly,**

18 **IT IS HEREBY ORDERED** denying without prejudice Defendant's Motion for
19 summary judgment. (Dkt.#7).

20 **IT IS FURTHER ORDERED** that this matter will be set for a Rule 16 Scheduling
21 Conference shortly by separate Court order.

22 DATED this 14th day of September, 2007.

Mary H. Murgula
United States District Judge