**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Moore, ) | No. CV 06-2408-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| American Family Mutual Insurance ) | |
| Company, a Wisconsin corporation, John ) | |
| Does I-X, ABC-XYZ Corporation, and ) | |
| Black and White Partnership, jointly and ) | |
| severally, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

Currently before the Court is Defendant American Family Mutual Insurance Company's ("Defendant") second Motion for Summary Judgment. (Dkt. #121). After considering the pleadings and holding oral argument on March 19, 2009, the Court issues the following order.

**I.     BACKGROUND**

On October 6, 2000, Rolf Orest ("Mr. Orest") struck Plaintiff Scott Moore ("Moore"), a pedestrian, while driving a 1997 Ford F-150 truck. (Defendant's Statement of Facts ("DSOF") ¶ 72 (Dkt. #122)). Plaintiff suffered severe bodily injury; he became

disabled. (Id. ¶ 76; Compl. (Dkt. #1, Exh. 1)). On November 2, 2001, Plaintiff, through his attorney, notified Defendant of the accident. (DSOF ¶ 74). However, Defendant denied coverage, claiming that the insurance policy for the Ford F-150 was not in force on the date of the accident. (Id. ¶ 75). Then, on October 4, 2002, Plaintiff brought a personal injury lawsuit against Mr. Orest and Susan Laguire Orest ("Ms. Orest")[1] (collectively, the "Orests") in Maricopa County Superior Court, CV2002-019400 (referred to throughout as the "underlying litigation"). (Id. ¶ 76). Defendant did not provide the Orests with a defense to the lawsuit. (Id. ¶ 77). As a result, on April 5, 2005, Plaintiff and the Orests, with the advice of counsel (see Dkt. #129, Exh. 5), entered into a Damron Agreement[2], which provided for a stipulated judgment in the amount of $35 million, a covenant not to execute against Mr. Orest's assets, and an assignment of Mr. Orest's rights against Defendant. (DSOF ¶¶ 79-80).

On September 11, 2006, Plaintiff filed an action in Maricopa County Superior Court, asserting claims of breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl.). The case was removed to this Court on October 10, 2006. (Dkt. #1). Defendant answered Plaintiff's complaint on October 10, 2006. (Dkt. #2). Then, on February 5, 2007, Defendant filed a Motion for Summary Judgment,

---

[1] Ms. Orest now goes by the name of Ms. Susan Shambre. (Dkt. #124, p.3).

[2] A "Damron Agreement" is a settlement agreement entered into by an insured under a liability policy for a judgment in favor of a third-party tort claimant. Associated Aviation Underwriters v. Wood, 98 P.3d 572, 577 (Ariz. Ct. App. 2004); see Damron v. Sledge, 460 P.2d 997 (Ariz. 1969). The insured assigns his rights against the insurer to the claimant and receives in return a covenant from the claimant not to execute the judgment against the insured in cases where the insurer refuses to provide a defense to the insured in the underlying action. Id.

claiming that the Orests' automobile liability insurance coverage for the 1997 Ford F-150, Policy # 0659-0646-04-02-SPPA-AZ ("04 Policy"), had been properly terminated pursuant to A.R.S. § 20.1632.01 for non-payment of premiums prior to the October 6, 2000 accident, thus depriving the Orests of coverage. (Dkt. #7). On September 14, 2007, the Court denied without prejudice Defendant's Motion for Summary Judgment in order to allow Plaintiff the opportunity to perform discovery on whether coverage existed at the time of the accident. (Dkt. #13).

On August 29, 2008, after the close of discovery, Defendant filed the instant Motion for Summary Judgment, arguing once again that the automobile liability insurance coverage for the 04 Policy was properly terminated pursuant to A.R.S. § 20.1632.01 for non-payment of premium prior to the October 6, 2000 accident. (Dkt. #121). Plaintiff disputes the lack of coverage. (Dkt. #124).

In the alternative, Defendant moves for partial summary judgment on Plaintiff's claim that Defendant violated the implied covenant of good faith and fair dealing. (Dkt. #121, p.11). Defendant argues that Plaintiff's failure to make a settlement offer within the policy limits prior to entering into a Damron agreement with the Orests limits Plaintiff's recovery to the policy limits. Defendant also argues that Plaintiff provides no evidence to support his claim for breach of the implied covenant of good faith and fair dealing and should not be allowed to seek punitive damages. Plaintiff does not contest summary judgment as to punitive damages. (Dkt. #124, p.1) However, Plaintiff argues that a settlement offer is not a pre-requisite to a bad faith claim. Plaintiff also contends

that Defendant destroyed evidence and thus Plaintiff is entitled to an adverse inference instruction. (Id., p.4).

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment, the non-moving party must show that there are genuine issues of material fact "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In addition, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); accord Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The evidence must be viewed in the light most favorable to the nonmoving party. Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

## III. DISCUSSION

### A. Cancellation of Coverage

A.R.S. § 20.1632.01 states, in pertinent part:

A. In motor vehicle insurance policies there shall be a provision that the policyholder is entitled to a minimum grace period of seven days for the payment of any premium due . . . during which grace period the policy shall continue in full force.
B. For any motor vehicle insurance policy cancelled or nonrenewed [by the insurer] for
[1] nonpayment of premium . . .
[2] after the grace period,
[3] the insurer must mail a notice of cancellation or nonrenewal

- 4 -

>    [4] to the policyholder
>    [5] at the policyholder's last address on record with the insurer
>    [6] by first class mail. The cancellation or nonrenewal is effective on the date the notice is mailed to the policyholder. The notice shall include or be accompanied by
>    [7] a statement in writing of the reasons for such action by the insurer and
>    [8] a notice indicating the named insured's right to complain to the director of the insurer's action within ten days after receipt of the notice by the insured.
>    . . .
>    D. For the purposes of this section, "grace period" means the period of time after the premium due date during which the policy remains in force without penalty even though the premium due has not been paid.

The primary dispute between the parties involves the fourth element. Nevertheless, the Court will evaluate each element of A.R.S. § 20.1632.01 according to the numerical designation assigned above.

Element 1: Defendant provides a printout of its billing history for the 04 Policy, which shows that no payment was received after April 3, 2000. (DSOF, Exh. 3A). In response, Plaintiff cites to conclusory testimony by Mr. Orest that he always paid his insurance bills upon receiving them (Plaintiff's Statement of Facts ("PSOF") ¶ 35 (Dkt. #125)). However, conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff submits no evidence to show that payment was, in fact, made after April 3, 2000. Thus, no genuine issue of material fact exists as to the nonpayment of premium.

Element 2: Plaintiff does not allege that Defendant failed to provide insurance coverage during the required grace period. Thus, no genuine issue of material fact exists as to this element.

Elements 3 and 6: The insured's alleged non-receipt of the notice of cancellation does not create a genuine issue of fact where the insurer comes forward with evidence of mailing provided by the United States Post Office. Gov't Employees Ins. Co. v. Superior

1  Court, 553 P.2d 672, 674 (Ariz. Ct. App. 1976). Defendant provides a copy of a
2  Certificate of Mailing, which shows that a notice of cancellation was mailed by first class
3  mail to Ms. Orest at 2031 W. Campbell Avenue in Phoenix, Arizona ("Campbell
4  address") on June 7, 2000. (DSOF, Exh. 5A). The parties agree that a postal seal on the
5  manifest signified the acceptance of the mail and the certificate of mailing. (PSOF ¶ 61).
6  However, Plaintiff argues that "no American Family employee checked the envelopes
7  against the mailing certificate to make sure that the addresses were correct and that there
8  was an envelope for each and every address listed on the certificate," that "no employee
9  checked the notices to ensure they were properly printed" that it is "possible that an
10 envelope had a proper address showing in the front, but that the notice could be flawed or
11 missing a Notice of Cancellation," and that "the only check done in the mail room was
12 when an employee would grab a handful of envelopes from a tray of 900 and check those
13 addresses.." (Dkt. #124, p.5). Aside from these conclusory allegations and attorney
14 argument about an alleged lack of quality control, Plaintiff presents no evidence to cast
15 doubt on the reliability of the routine processes used by Defendant to generate the
16 Certificate of Mailing. Again, conclusory allegations, unsupported by factual material,
17 are insufficient to defeat summary judgment. Taylor, 880 F.2d at 1045. Therefore, no
18 genuine issue of material fact exists as to these elements.

    Element 5: The parties agree that the Campbell address was the last address on
record with the insurer at the time the notice of cancellation is alleged to have been sent.
(DSSOF ¶ 34; PSOF ¶ 11). Nevertheless, Plaintiff argues that Mr. Orest never *received*
the notice of cancellation. This argument is unavailing, however, because under Arizona

law an automobile insurance policy is effectively cancelled at the time the notice of cancellation is mailed. A.R.S. § 20.1632.01(B); accord Gov't Employees Ins. Co., 553 P.2d at 674. Therefore, no genuine issue of material fact exists as to this element.

Elements 7 and 8: Plaintiff does not allege that Defendant failed to provide a statement in writing describing the reasons for cancellation of the 04 Policy or a notice indicating the named insured's right to complain to the director of the insurer's action within ten days after receipt of the notice by the insured. Therefore, no genuine issue of material fact exists as to these elements.

**B.    Element Four**

With respect to the fourth element, Plaintiff contends that both Mr. and Ms. Orest were policyholders on the 04 Policy. In support of that contention, Plaintiff refers to a declarations page[3] ("Dec Sheet"), which according to Plaintiff's counsel at oral argument, was produced on February 2008 and lists both Mr. and Ms. Orest on the 04 Policy. Plaintiff also points to the Orests' deposition testimony that they believed they were policyholders on the 04 Policy. (PSOF, Exh. 8). Again, however, conclusory statements are insufficient to establish a genuine issue of material fact. Taylor, 880 F.2d at 1045. In addition, Plaintiff provides a printout of one of Defendant's agent's billing screens, which lists the Orests and the 03 and 04 Policies associated with their accounts.[4] (PSOF, Exh. 1).

---

[3] A declarations page is a statement provided by an insurer that lists an insured's policy number, name and address, property insured, its location and description, the policy period, premiums, and supplemental information.

[4] Plaintiff provides additional evidence about policies other than the 04 Policy: a letter from Stephanie Phelps of American Family Insurance Group referring to Mr. Orest as a

- 7 -

Defendant argues that the particular Dec Sheet referenced by Plaintiff simply contained a clerical error and should not have listed Mr. Orest as a policyholder on the 04 Policy, and thus is not useful in determining the identity of the policyholder. (Dkt. #129, p.3). These assertions are corroborated in the more than 65 pages of original, raw data associated with the 04 Policy that Defendant provided. (DSOF, Exh. 2F). That data, according to Defendant, was used to recreate the Dec Sheet and establishes that Mr. Orest was never a policyholder on the 04 Policy. (Dkt. #129, p.3).

Furthermore, Defendant argues that its agent's single billing screen "is not probative because the agent testified that the screen simply shows the names of his customers." (Id.). Defendant also provides various other documentation to show that only Ms. Orest, and not Mr. Orest, was a policyholder on the 04 Policy: an ASIC Daily Purge List (DSOF, Exh. 2F); the Certificate of Mailing of the 04 Policy (id., Exh. 5A); a Notice of Cancellation of the 04 Policy (id., Exh. 7D); the corrected Dec Sheet (id., Exh. 1C); an Account Summary for the 04 Policy (id., Exh. 2D). Plaintiff provides no response to the fact that the original data used to recreate the Dec Sheet shows only Ms. Orest as the policyholder on the 04 Policy. Plaintiff simply relies on the recreated Dec Sheet, billing screen, and Mr. Orest's conclusory deposition testimony.

---

policyholder on policy numbers 0659-0646-01-93-FPPA-AZ ("01 Policy") and 0659-0646-02-96-FPPA-AZ ("02 Policy"); an application for insurance that bears Mr. Orest's signature for insurance on a 1992 Geo Prism and a 1992 Nissan Sentra; a printout entitled "Sysm Outbasket Print," referencing the 01 and 02 Policy; a payment stub referencing the 01 and 02 Policy. (PSOF, Exh. 1). However, this evidence is irrelevant to the question of whether Mr. Orest was a policyholder on the 04 Policy.

- 8 -

In light of the totality of the evidence presented, the allegedly erroneous recreated Dec Sheet and the agent's billing screen amount to no more than a scintilla of evidence; they are not enough to withstand summary judgment. See Anderson, 477 U.S. at 251–52. For the Court to accept Plaintiff's assertions that this evidence proves, or provides a reasonable inference, that Mr. Orest was a policyholder on the 04 Policy, the Court would have to infer that Defendant fraudulently recreated or modified its numerous pages of original data and various other documents submitted to the Court. One recreated and allegedly erroneous Dec Sheet and a billing screen for all of the Orests respective insurance policies is insufficient to support such an inference and establish a genuine issue of material fact as to this element.

In sum, Plaintiff fails to present sufficient evidence to establish a genuine issue of material fact from which a reasonable juror could find that an element of A.R.S. § 20.1632.01 was not met. Defendant properly cancelled the 04 Policy pursuant to A.R.S. § 20.1632.01, and thus the 04 Policy was not in force at the time of the accident. Summary judgment is appropriate.

**C.     Spoilation of Evidence**

Plaintiff alleges that Defendant destroyed evidence by "purging" data and thereby destroying copies of original documents, which forced Defendant to recreate documents from raw data. (Dkt. #124, p.4). Plaintiff also contends that Defendant destroyed the original Dec Sheet that showed that Mr. Orest was a policyholder on the 04 Policy and thus a "jury should be able to draw adverse inferences from the fact that [Defendant] cannot or will not produce the [Dec Sheet]." (Id.). In response, Defendant contends that it

- 9 -

has not destroyed any evidence, that its "business practice is to maintain electronic records for all transactions on automobile insurance policies[,]" and that it "stopped microfilming [Dec Sheets] between 1985 and 1988 . . . and did not start scanning [Dec Sheets into a scanning system] until April 11, 2007." (Dkt. #129, pp.5–6). Defendant also states that before data is purged, it is written into "an online history database." (Id., p.9). Then, thirteen months later, it "is transferred to offline history, which is stored on a generational data group tape." (Id.). As such, because Defendant does not retain copies of original Dec Sheets, it must recreate the Dec Sheet using raw data. (Id., pp.3, 6).

Defendant has provided more than 65 pages of raw data that has been stored in Defendant's database and is associated with the 04 Policy account history. (DSOF, Exh. 2D). Defendant contends that it used this data to recreate the Dec Sheet. (Dkt. #129, p.3). Plaintiff presents no evidence to reasonably question Defendant's alleged business practice of recreating Dec Sheets from stored data, let alone that any data or documentation was kept and then destroyed in anticipation of litigation. Plaintiff merely objects to the fact that Defendant stored data in raw form as opposed to retaining original Dec Sheets. Any inference drawn therefrom would be purely speculative. Accordingly, there is insufficient evidence to support an adverse inference.

### D.     **Recovery Beyond Policy Limits**

In the alternative, the Court will address Defendant's request for partial summary judgment on Plaintiff's claim that Defendant violated the covenant of good faith and fair dealing. (Dkt. #121, p.1). Defendant argues that Plaintiff's failure to make a demand

- 10 -

within the policy limits prior to entering into a settlement agreement with the Orests limits Plaintiff's recovery to the limits under insurance policy. (Id.).  Plaintiff, on the other hand, cites Deese v. State Farm Mut. Auto. Ins. Co., 838 P.2d 1265 (Ariz. 1992) for the proposition that bad faith on the part of an insurer can subject it to liability in excess of the policy limits.

However, Deese merely discussed the tort of bad faith and the breach of the covenant of good faith and fair dealing generally, stating that "the implied covenant of good faith and fair dealing requires that an insurer treat its insured fairly in evaluating claims." 838 P.2d at 1268.  The issue in Deese was limited to "whether breach of an express covenant in an insurance policy is a necessary prerequisite to a bad faith claim," id. at 1269; the court did not discuss whether a reasonable settlement offer was necessary in order to obtain damages in excess of the policy limits.  "[T]he decisive factor in extending liability beyond the policy limit [i]s not the refusal to defend, but the refusal to accept an offer of settlement within the policy limits." State Farm Mut. Auto. Ins. Co. v. Paynter, 593 P.2d 948, 955 (Ariz. 1979).  "[W]hen an insurer denies coverage in bad faith, it is not liable for the amount of a judgment entered against its insured that exceeds the policy limits absent a refusal of a reasonable settlement offer, unless the insured can establish other causal connections between the insurer's act and the excess judgment." Rogan v. Auto-Owners Ins. Co., 832 P.2d 212, 218 (Ariz. Ct. App. 1991).  In other words, bad faith is not the only component in subjecting an insurer to liability in excess of policy limits.  Paynter and Rogan direct that a judgment against an insured is enforceable against

- 11 -

the insurer above the policy limits only if the insurer acted in bad faith in denying coverage *and* a causal connection – either refusal of a reasonable settlement offer or another type of causal connection – exists between the insurer's act and excess judgment.

      1.     Bad Faith

"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Noble v. Nat'l Am. Life Ins. Co., 624 P.2d 866, 868 (Ariz. 1981); see Rawlings v. Apodaca, 726 P.2d 565, 576 (1986) ("Where an insurer acts reasonably, there can be no bad faith."). As discussed above, the recreated Dec Sheet that Plaintiff relies on to allege that Mr. Orest was an insured on the O4 Policy was not recreated until sometime well after the accident and after the Defendant first denied coverage in the underlying litigation. Plaintiff presents no direct evidence to establish that Defendant relied on anything other than the original, raw data submitted to the Court, which shows that only Ms. Orest was a policyholder on the 04 Policy. And the evidence presented by Plaintiff, as discussed above, is insufficient to draw a reasonable inference that Defendant knew or should have known that coverage existed at the time of the accident. Therefore, Plaintiff has not provided sufficient evidence to establish the absence of a reasonable basis, or a reasonable inference to that effect, for Defendant's determination that Mr. Orest was not insured by Defendant at the time of the accident.

//

### 2.     Refusal of a Reasonable Settlement Offer

Defendant states that it was not presented with a settlement offer in the underlying litigation and thus never refused a settlement offer, reasonable or not. (Dkt. #121, p.10). In addition, at oral argument, Plaintiff's counsel conceded that he did not make a settlement offer to Defendant. As such, Defendant did not refuse a reasonable settlement offer.

### 3.     Other Causal Connections Between the Insurer's Act and the Excess Judgment

The Rogan court stated that "there may be other circumstances in which a causal connection between the denial of coverage or the refusal to defend and the excess judgment occurs without a reasonable offer to settle." 832 P.2d at 218 n.4. For example, a causal connection might be found when an insurer refuses to defend, and as a result, the insured is unrepresented and "suffers a default or final judgment [or] the judgment would have been lower if there had been a proper defense." Id. Here, however, despite Defendant's refusal to defend Mr. Orest, Mr. Orest was represented by an attorney during part of the underlying litigation and he did not suffer a default judgment; he voluntarily entered into a Damron Agreement with Plaintiff and stipulated to a final judgment. (Dkt. #129, Exh. 5).

Nonetheless Plaintiff argues that a causal connection exists here as he was discouraged from making a reasonable settlement offer within policy limits because Defendant "refused to provide [the] policy limits." (Dkt. #124, pp.11–12). However, at oral argument, Plaintiff's counsel acknowledged that at no time during the underlying

- 13 -

litigation did he ask Defendant or Mr. Orest to provide the policy limits on the 04 Policy. There is no evidence to suggest that Plaintiff made a reasonable effort to discover the 04 Policy limits or make a settlement offer in the underlying litigation.  As such, he cannot now claim inability to make a reasonable settlement offer within policy limits as a causal connection between Defendant's acts and the excess judgment.  In the alternative, partial summary judgment is appropriate.

**Accordingly,**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. (Dkt. #121).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 29th day of March, 2009.

Mary H. Murguia
United States District Judge